2025 IL App (1st) 250684-U

No. 1-25-0684B

First Division
July 25, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 25 CR 347501 |
| v. | ) | |
| | ) | |
| JOSHUA HALL, | ) | Honorable |
| | ) | Patrick Coughlin |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's order denying defendant-appellant's pretrial release, where the initial pretrial detention hearing was fairly conducted and where there were no conditions or combination of conditions to mitigate the real and present threat posed by defendant.

¶ 2    On March 3, 2025, defendant-appellant, Joshua Hall, was arrested and initially charged with aggravated vehicle hijacking with a firearm, a Class X felony (720 ILCS 5/18(a)(4) (West 2022)), armed robbery with a firearm, a Class X felony (720 ILCS 5/18-2(a)(2) (West 2022)), and

aiding and abetting possession of a stolen vehicle, a Class 2 felony (625 ILCS 5/4-103(a)(1) (West 2022)). Hall was charged with three other co-defendants, Kamerin Young, Ronnie Martin, and Ronell[1] Martin. Hall's charged offenses were later superseded by felony indictment, where he was charged with one count of aggravated vehicular hijacking, one count of aggravated battery (720 ILCS 5/12-3.05(c) (West 2022)), and three counts of aggravated unlawful possession of a weapon, a felony (720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2022)).

¶ 3    On March 5, 2025, the State filed a verified petition for a pretrial detention hearing pursuant to articles 110-2 and 110-6.1 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/110-2, 110-6.1 (West 2022)), as amended by Public Act 101-652, commonly known as "the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act" or the "Pretrial Fairness Act" (Act). See Pub. Acts 101-652, § 10-255 (eff. Jan. 1, 2023); 102-1104, § 70 (eff. Jan. 1, 2023); Ill. S. Ct. R. 604(h)(1) (eff. Oct. 19, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). After conducting a hearing on the State's petition for Hall and two other defendants, the circuit court granted the petition and ordered Hall detained. On March 19, 2025, appearing before a second judge, Hall's counsel orally moved to reconsider his detention, which was denied. On April 1, 2025, Hall's counsel filed a written motion for relief before a third judge, who denied that motion and ordered Hall's continued detention.

¶ 4    Now, on appeal, Hall challenges his pretrial detention arguing that: (1) his hearing and detention determination was unfairly conducted and biased; and (2) the State failed to proffer evidence, and the circuit court erred in determining, that there were no conditions or combination

---

[1]Confusingly, Ronell Martin's name is spelled differently throughout the record and is sometimes referred to as "Ronnie," despite having a co-defendant with the same name.

of conditions sufficient to mitigate his risk to the community. For the reasons that follow, we affirm the circuit court's detention order.

¶ 5                                    I. BACKGROUND

¶ 6                              A. State's Detention Petition

¶ 7     On March 5, 2025, the State filed its verified petition for pretrial detention. Therein, the State argued that Hall was eligible for pretrial detention because the charged offenses of armed robbery and aggravated vehicular hijacking were non-probationable felonies and/or forcible felonies pursuant to sections 110-6.1(a)(1) and (a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2022)), (725 ILCS 5/110-6.1(a)(1.5) (West 2022)); (2) Hall posed a "real and present threat to the safety of any person or persons or the community;" and (3) there were "[n]o condition or combination of conditions set forth in [725 ILCS 5/110-10(b) (West 2022)] *** to mitigate that risk." Regarding the second element, the State attached an addendum to its petition. We recite only so much of the addendum as is necessary to an understanding of the events and as are particularly relevant to disposition of Hall's appeal.

         "On [March 2, 2025] at 9:16 PM, officers responded to an [aggravated] vehicular hijacking. Victim stated she was driving her mother's rental vehicle, a red Hyundai, with two juveniles in the back seat. Victim arrived at 591 Calhoun Avenue and parked in the middle of the street. Victim observed [four] suspects approach her vehicle. One of them, a black male wearing a black coat and ski mask, knocked on the window and pointed a firearm at her face, stating 'get out of the car.' The offenders yelled at victim to give them the keys, and pulled her out, saying 'turn around or I'll shoot.' A second offender pointed a handgun at her, as well. Victim complied and she and the juveniles ran into their family's

residence. Victim's purse with some personal belongings, including her phone, were left in the vehicle. The four offenders got into the vehicle and fled.

*** *** ***

Officers then put out an ISPERN bulletin. [The] Munster, [Indiana] [police department] then informed officers that a vehicle matching the description had been detected via an LPR hit in Munster, [Indiana]. Officers were then provided an image of the vehicle. Officers then presented the image of the Red 2025 Hyundai Sonata to [the] victim, who positively identified the vehicle. Officers also obtained the license plate information of the vehicle.

On [March 2, 2025] at around 11 PM, officers learned that Munster, [Indiana] officers were in pursuit of the vehicle, which was involved in a carjacking in Gary, [Indiana], as well as an [aggravated battery with a firearm] in Merrillville, [Indiana]. Munster, [Indiana] officers pursued the vehicle across state lines, and into [Illinois] where they then lost sight of the vehicle. [Illinois State Police] troopers were able to locate the vehicle and continued the pursuit, with the vehicle driving in excess of 130 [miles per hour] and disobeying multiple traffic control devices. The pursuit continued into Dolton, Illinois.[2]

Eventually, in the area around 144th [Street] and Chicago [Avenue], all five occupants, including these defendants as well as a juvenile offender, exited the vehicle and began to flee on foot. [Illinois State Police] troopers continued to pursue the offenders. ***.

---

[2]We take judicial notice that, according to Google Maps, the distance between Calumet City, Illinois, and Gary, Indiana is 13.8 miles, and the distance between Calumet City and Merrillville, Indiana is 21.3 miles. See *People v. Clark*, 406 Ill. App. 3d 622, 633-34 (2010) (the reliability of mainstream Internet sites such as Map Quest and Google Maps warrants judicial notice).

After a brief foot pursuit, all five offenders were apprehended. \*\*\*. Defendant Hall and the juvenile offender were caught hiding underneath cars. A ghost gun was recovered from the juvenile. \*\*\*. A search of the vehicle recovered a Mossberg .22 caliber rifle adjacent to the driver's seat of the vehicle.

A cellphone was recovered from defendant [Kamerin] Young. On [March 4, 2025], [Detective] Coffey obtained a search warrant to search that cellphone. After reviewing text message records from that cell phone, [Detective] Coffey learned that at about 6:56 PM on the date of this incident, defendant Young had been exchanging text messages with defendant Hall. The text messages stated in summary, not verbatim[,] that they needed to get a vehicle, and that they could get a vehicle from a gas station. Defendant Young further stated via text that 'lil bro' was bringing some more 'pipes.' From observation, training and experience, [Detective] Coffey understood the word 'pipes' to refer to firearms.

Defendant Hall, after being read his Miranda rights, stated he was present for the carjacking and he entered the car, and he was driven to Indiana. During a second interview, defendant identified a photo of himself pointing a gun at a victim during the Indiana robbery. Defendant Hall admitted to having a gun in his hand during the Calumet City hijacking and sitting in the passenger seat. Defendant admitted to firing his weapon towards a vehicle during the attempted robbery in Indiana. Defendant said police chased the vehicle and he fled on foot from officers. He passed his firearm to someone else in the car prior to running.

Defendant Ronell Martin, after being Mirandized, advised they needed a car, so they approached victim's car with his revolver and pointed it at a victim. He said he got

into the backseat with Defendant Ronnie Martin, Defendant Young was driving, and defendant Hall was in the front passenger seat. They picked up the juvenile after that."

¶ 8    The addendum further noted that Hall did not have a valid FOID card or CCL registration. The petition also contained a Pretrial Services Public Safety Assessment. Therein, the report indicated that Hall's "new criminal activity score was a "2" out of "6," and "failure to appear" was a "1" out of "6." It also listed "new violent criminal activity flag" as "no." In the event of pretrial release, the assessment recommended "Level 3."

¶ 9                              B. Initial Pretrial Detention Hearing[3]

¶ 10                                    1. Hearing

¶ 11    On March 5, 2025, a hearing was held on the State's petition against Hall and two of his co-defendants, Ronnie Martin and Ronell Martin. All three were present in court, all three were represented by the public defender's office, and the petitions for all three were heard together. The State tendered a copy of all three petitions to defense counsel, which included police reports, LEADs reports, criminal backgrounds, and "work product." Defense counsel acknowledged receipt.

¶ 12                              a. State's Proffer

¶ 13    The State reiterated many of the facts set forth in its petition and noted that Hall did not have a FOID card or CCL registration. Following the court's grant of the State's request for a *Gerstein* finding,[4] the State proceeded with its proffer in support of detention, first, specifically

---

[3]The original detention hearing was presided over by Judge Luciano Panici, Jr. Hall's motion to reconsider was presided over by Judge Jerome Barrido. Finally, Judge Patrick Coughlin presided over Hall's motion for relief.

[4]"Gerstein" refers to *Gerstein v. Pugh*, 420 U.S. 103, 112, 125 (1975), which holds that a defendant arrested without a warrant and charged by information must be promptly presented before a neutral magistrate to determine whether probable cause for arrest exists.

regarding defendant Ronnie Martin, second, specifically regarding Ronell Martin, and third, regarding Hall. In concluding its proffer regarding Ronnie Martin, the State noted that all of the defendants had fled across state lines.

¶ 14    Regarding Hall, the State reiterated that Hall had admitted to being in the vehicle that police were chasing, that he had a gun in his hand during the Calumet City hijacking, that he sat in the passenger seat, and that he had fired his weapon towards the vehicle during an attempted robbery in Indiana. The State noted that it had met "prong one," as well as prongs two and three "for the same reason."

¶ 15                           b. Defense's Argument Against Detention

¶ 16    Defense counsel first challenged the petition as related to both Ronnie Martin and Ronell Martin. Regarding Hall, whose parents were present in court, counsel noted that Hall was 18 years old, lived with his mother, was a senior at a prep school in Chicago, and had a summer job at a youth program. Defense counsel admitted that the charges were "egregious," but asserted that, as with both Ronnie and Ronell, electronic monitoring was appropriate for Hall.

¶ 17                           2. Circuit Court Ruling

¶ 18    After finding that the State had met its burden regarding each prong, the court granted the State's petition as to "Ronnie Martin" and ordered him detained. He also granted the petition for "Ronnel Martin" for "the same reasons[.]" Notably, with respect to Ronell, in comments on the dangerousness prong,  the court stated that Ronell was a real and present threat based on "egregious conditions" which were "in and of itself" a "serious threat to the community," where "[t]hese four people had the unmitigated gall to stop a car, point guns at the victims[,] and told them to leave the car or they'd be shot."

¶ 19    Regarding Hall, and as to the first prong, the court found the State had met its burden where it was alleged that Hall had committed vehicular hijacking, which included the "egregious condition" of pulling over a vehicle, pulling a gun at the victims, and telling them to leave. Second, as to the dangerousness prong, the court found that Hall posed a real and present threat to the community and society. Third, the court determined that there were no least restrictive conditions that could mitigate Hall's risk because "[e]lectronic [m]onitoring, again, will not work for these types of cases[.]" As such, the court ordered Hall detained.

¶ 20    A written order, although difficult to decipher, was entered that same day.

¶ 21                                          C. Indictment

¶ 22    On March 20, 2025, Hall was formally indicted by grand jury and his previous charges were superseded. The new charges included one count of aggravated vehicular hijacking, one count of aggravated battery, and three counts of aggravated unlawful possession of a weapon.

¶ 23                                    D. Motion to Reconsider

¶ 24    On March 19, 2025, a status hearing was held before a different judge. All four defendants, Kamerin Young, Ronell Martin, Ronnie Martin, and Hall, were present in court.[5] The State informed the court that some of the cases had been formally indicted. As such, the court admonished the defendants. Defense counsel also requested to be heard on a motion to reconsider all her clients' detention statuses, including Hall's. The court noted that defense counsel had not filed any written motion for relief and thus "nothing [was] preserved" and that "prong one [was] not at issue."

---

[5]Kamerin Young was represented by a different defense counsel following withdrawal by the public defender's office.

¶ 25    Regarding Hall in particular, defense counsel argued that electronic monitoring was appropriate for Hall given his background and lack of prior criminal history. Specifically, she noted that Hall was 18 years old, was a senior at a college prep high school in Chicago, and was set to graduate in May 2025. He received two college football scholarship offers from Milikin University and Rockford University. Hall had an IEP for dyslexia, played on the rugby team, and travelled over an hour for school every day. Defense counsel noted that Hall's parents and grandfather were in court and argued that electronic monitoring would be the least restrictive means as Hall had no "willful flight" and would return for future court hearings.

¶ 26    Subsequently, the court took "judicial notice of the order after pretrial detention," but indicated that the order's handwriting was difficult to decipher. It further stated that it would "start ruling on these after [hearing] from the State" and was "not going to switch to the other gentleman." The court asked for further argument from the State, noting that "the first prong ha[d] already been met concerning clear and convincing evidence" and that the State should "focus on what this defendant is alleged."

¶ 27    In response, the State reiterated some of its previous proffer, conceding that Hall did not have a "punishable background." However, the State indicated that the state of Indiana was still considering whether to charge all defendants for the separate carjackings and police pursuit within its jurisdiction. The State reiterated that Hall had been found hiding underneath a car after he was seen leaving the stolen vehicle. When asked by the court how Hall had been identified as the individual who had said "turn around or I will shoot you," the State responded that those statements may have been attributed to defendant Young, who had not been charged with aggravated vehicular hijacking. The court asked for clarification regarding the allegations against Hall, specifically if he had been the individual who had pointed a firearm. The State responded that it

believed that was the case but that it did not "have the full case file[.]" The State noted that in statements on the record following admonishment of *Miranda* rights, Hall had admitted that he had been present for the carjacking, had entered the car, and had driven to Indiana. He had also self-identified a photo showing him pointing a gun at a victim during a robbery in Indiana. Finally, Hall had admitted to having a gun in his hand during the hijacking, sitting in the passenger seat, and firing his weapon towards a vehicle during an attempted robbery in Indiana.

¶ 28 Following further argument, the court denied Hall's motion to reconsider. The court acknowledged Hall's mitigating circumstances, in that he was 18 years old, had a supportive family, was a senior in high school, had football scholarships to two universities, played rugby, and had no prior criminal background. However, the court still found that detention was necessary. The court determined that Hall's motion to reconsider had failed to present any new or relevant information that would alter the court's initial detention determination regarding the dangerousness prong to prevent a threat to the community, citing *People v. Wilson*, 2025 IL App (1st) 242454-U, in support. Specifically, the court referenced the State's allegations that Hall had approached the stolen vehicle and thus had taken a "substantial step" for harm, that "one of the gentlemen" had pointed a gun at the car owner with a threat to exit the vehicle, and that there was a second separate hijacking in Indiana still being investigated. The court noted that the "terror [was] unimaginable" to the public and thus the State's argument was compelling as to the dangerousness prong. Finally, the court noted that, although Hall did not have a criminal background, the facts of the instant case were "extremely dangerous, extremely violent, [and] extremely depraved." As such, the court ordered Hall's continued detention.

¶ 29                                 E. Motion for Relief

¶ 30                                      1. Motion

¶ 31    On April 1, 2025, Hall filed a motion for relief pursuant to Supreme Court Rule 604(h)(2) (eff. April 15, 2024). First, he argued that the State had failed to meet its burden in establishing, by clear and convincing evidence, that no condition or combination of conditions would mitigate the real and present threat to any person or the community, or his willful flight. Hall contended that the State's proffer had failed to present any argument as to why electronic monitoring was insufficient beyond restating the allegations against him. Further, Hall pointed out that this was his first offense, and that the State had not presented any evidence as to why other conditions other than electronic monitoring would be insufficient to ensure any reoffending or failure to miss court, citing *People v. Stock*, 2023 IL App (1st) 231753. Hall further reiterated that he was 18 years old without any prior criminal history and with a supportive family structure, as well as his status to graduate high school, his receipt of two college scholarships which were now at risk due to his detainment, an IEP for dyslexia, extracurricular activities, and a summer job.

¶ 32    Second, Hall argued that the court had erred in determining that no conditions or combination of conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with another crime. According to Hall, the court had failed to comply with the Act where it failed to enter a detention order summarizing why less restrictive conditions would not be appropriate. Hall contended that pretrial services had the ability to monitor him while at home or at school through GPS and electronic monitoring. Hall attributed this error to the court's reliance on allegations that had not been specific to him, namely that the court found that he had pointed a gun at the complaining witness's head and had threatened to shoot her if she did not leave the car, when instead the State had only alleged that he was a passenger in the car and that he had possessed a gun during the hijacking. Hall further contended that the court had conflated the dangerousness and conditions prongs of the detention analysis by failing to consider his lack

of criminal history, age, family structure, and that he was a productive member of society. Hall further noted that the court had granted pretrial release with electronic monitoring for one of the "Martin brothers," despite one of them being the driver of the vehicle and threatening the complaining witness with a gun to her head.

¶ 33    Finally, Hall argued that he had been denied a fair hearing during the initial detention hearing. Hall pointed out that his hearing had been combined with two co-defendants, which had resulted in the State combining its proffers for all three men and the court's subsequent ruling as to all three at one time. This, according to Hall, had resulted in a proceeding where the court could not "keep the facts to each co-defendant straight." Additionally, Hall contended that the court had exhibited prejudicial bias in its ruling, where it stated "[e]lectronic monitoring again will not work for this type of people," as all three defendants were young black men who were similarly charged and represented by public defenders.

¶ 34                                    2. Hearing

¶ 35    A hearing was held for arraignment and on Hall's motion for relief before a third judge.[6] Hall, Ronnie Martin, and Ronell Martin were present in court. The court subsequently admonished defendants as to their rights and the charges against them.

¶ 36    Regarding Hall's motion, the court noted that it had reviewed the written filing and the transcript from the initial detention hearing. Defense counsel reiterated the motion's arguments and as to the alleged biased statement made by the first circuit judge, counsel acknowledged that the court had made similar comments in the transcript regarding "this type of case."

---

[6]The date of the transcript on the hearing for the motion for relief is April 8, 2025. However, Hall's notice of appeal challenges an "April 1, 2025" court order. Another document in the record also lists this hearing date as "April 1." Further, the notice of appeal is file-stamped on April 4, 2025, by the circuit court of Cook County, and then e-filed with our court on April 15, 2025.

¶ 37 The State responded that detainment was proper. In demonstrating that Hall's case had been properly and individually assessed, it pointed to Hall's own statements as well as the fact that possession of a firearm was enough for detainment, especially when used in the commission of crimes across state lines. Regarding conditions, the State reiterated the inability of the sheriff's office to constantly monitor Hall to prevent any flight or reoffending. The State also pointed to Hall's flight from the police during his apprehension, thus demonstrating an unwillingness to comply with a court order. Finally, the State acknowledged Hall's lack of criminal history as mitigating evidence but argued that it did not outweigh the danger to the community and the lack of conditions to mitigate his threat.

¶ 38 Defense counsel replied that Hall's statements were being "examined" for possible coercion, and that his statements should not be weighed as heavily as the State intended them. She further asserted that Hall's flight from police did not automatically indicate avoidance of future court proceedings.

¶ 39 3. Circuit Court Ruling

¶ 40 Ultimately, the court denied the motion and ordered continued detainment. As to the first prong, the court found that Hall's statements had been made post-*Miranda*, and that he had identified himself in a photo in a separate interview. As to the second prong, the court observed that the State's proffer had indicated that this had been a "random crime" as evidenced by Hall's text messages with another co-defendant about taking a vehicle from a gas station. The court also noted that Hall had admitted to possessing and using a firearm for the out-of-state incidents. As to the third prong, the court admitted that this was a "closer call" given the "relatively lower scores on the pretrial assessment[,] as well as the defendant's age and lack of background." Nevertheless, Hall had armed himself with a firearm without a FOID card or CCL and was accused of using the

firearm in Indiana. The court reasoned that, because the allegations against Hall constituted "violent offenses," he had illegally armed himself contrary to Illinois law, and had fled from a lawful direction to stop, electronic monitoring was not appropriate given the unlikelihood that Hall would follow the rules based on his demonstrated "unwillingness to follow the law or lawful directives[.]" The court further noted that electronic monitoring would be "useless" because it would have to be reviewed every 60 days, and that Hall constituted a threat to the community at large rather than a specific identifiable person as required by the Act. Finally, the court determined that GPS would also provide "little value" as there was no "specific address or exclusionary zone" that Hall would need to be restricted from.

¶ 41    This appeal followed.

¶ 42                                II. ANALYSIS

¶ 43                                A. Jurisdiction

¶ 44    Prior to proceeding, we note some date discrepancies in the record. Hall's motion for relief was filed on April 1, 2025, and his notice of appeal states that it is challenging an order of April 1, 2025. Additionally, the record contains a "PFA Appeal Report of Compliance" that lists a hearing date for April 1, 2025. However, the hearing transcript on the motion for relief, which includes the court's oral ruling, is dated April 8, 2025.

¶ 45    The notice of appeal was file-stamped, on April 1 and 4, 2025, and then in this court on April 15, 2025. A notice of appeal dated April 2, 2025, also appears in the record. In its response brief, the State states that Hall filed a notice of appeal on "April 2, 2025," but does not identify a date for the hearing on Hall's motion for relief. Supreme Court Rule 604(h)(2) (eff. April 15, 2024) provides that a motion for relief must be presented and ruled upon by the circuit court prior to appeal. No argument is made by the State that the appeal is prematurely filed. It appears to us that

the hearing transcript was incorrectly dated April 8, 2025, and that notice of appeal was proper. Thus, we have jurisdiction.

¶ 46                              B. The Procedure Code

¶ 47     The Procedure Code now presumes that all persons charged with a qualifying offense shall be eligible for pretrial release prior to conviction. 725 ILCS 5/110-2(a); 725 ILCS 5/110-6.1(e) (West 2022). Therefore, pretrial release may be denied *only* if a person is charged with a qualifying offense as delineated within section 110-6.1 of the Procedure Code and following the conducting of a corresponding hearing. *Id.* §§ 5/110-2; 5/110-6.1(e)-(f).

¶ 48     The State will also trigger the requirement for a pretrial detention hearing upon its timely filing of a verified petition for detainment. *Id.* § 5/110-6.1(a). The State must prove, by clear and convincing evidence, three elements in its petition: (1) that the "proof is evident or the presumption great" that the defendant has committed an eligible detainable offense (*Id.* § 5/110-6.1(e), (e)(1)), (2) that a defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts [of their case]," (*Id.* § 5/110-6.1(a)(6), (e)(2)) and (3) that there is "no condition or combination of conditions set forth" within the Procedure Code that could mitigate that real and present threat to the safety of any person, persons, or the community, based on the facts of the case (*Id.* § 5/110-6.1(e)(3)). Moreover, if the charged offense is a felony, the court must also determine whether there is probable cause that the defendant has committed an offense absent certain exceptions. *Id.* § 5/110-6.1(b) (West 2022).

¶ 49     Following the filing of a petition for detainment, the circuit court must hold a hearing. See *id.* §§ 5/110-6.1(a), (c), (f); 725 ILCS 5/110-7.5(b)(1). Each decision regarding pretrial release is individualized, and no single factor or standard is determinative. *Id.* § 5/110-6.1(f)(7). If the court determines that the State has met its burden on its petition, the court must make a written finding

summarizing its reasons for pretrial detention. *Id.* § 5/110-6.1(h). To appeal a grant or denial of pretrial release, an appealing party must first file a motion for relief before the circuit court that requests the same relief that will eventually be sought on appeal. Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024); see also 725 ILCS 5/110-6.1(i-5) (West 2022) (court must determine that continued detention is necessary at each subsequent appearance). Following the circuit court's review and denial of the motion, the party may appeal to the appellate court. Ill. S. Ct. R. 604(h)(1) (eff. April 15, 2024).[7]

¶ 50                        C. Standard of Review

¶ 51    Our supreme court recently defined the standard of review for initial detention hearings, which is dependent on whether live witness testimony was presented at the hearing. See *People v. Morgan*, 2025 IL 130626. Specifically, where live witness testimony is presented, "the circuit court's ultimate detention decision under section 110-6.1 [(725 ILCS 5/110-6.1 (West 2022)], in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Id.* ¶ 54. However, if the hearing proceeds solely by proffer, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id.*

¶ 52    Here, the underlying detention hearings did not involve any live witness testimony, thus our standard of review is *de novo. People v. Opas*, 2025 IL App (1st) 250208, ¶ 34. Accordingly, we accord no deference to the circuit court's decision, meaning we stand in the same position as

[7]The motion for relief shall serve as the appellant's argument on appeal, but appellant may also file a supplemental memorandum in further support of the claims on appeal. Ill. S. Ct. R. 604(h)(7) (eff. April 15, 2024).

the circuit judge. *Morgan*, 2025 IL 130626, ¶¶ 21-22. With this framework in mind, we now turn to the merits of Hall's appeal.

¶ 53                                    D. Arguments

¶ 54    Hall has elected to have his motion for relief serve as his memorandum on appeal and has not further supplemented it. In response, the State defends the entirety of the detention order, but as Hall does not challenge the first and second prongs of the petition, we confine our review to whether the hearing was fairly conducted and the circuit court's conditions determination was proper.

¶ 55                          1. Whether a Fair Hearing was Conducted

¶ 56    The motion for relief asserted that Hall was denied a fair hearing for two main reasons. We address each in turn. First, Hall contends that he was entitled to an individualized hearing, as opposed to the initial proceeding which was combined with two of his co-defendants. He argues that the State provided one proffer for all three defendants, and the circuit court utilized "its reasoning for all three co-defendants at one time." Hall asserts that "there was so much information between the three" that the court could not "keep the facts as to each co-defendant straight" and one co-defendant who was alleged to be the driver of the vehicle was granted pretrial release with electronic monitoring.[8]

¶ 57    The State responds that Hall received an individualized determination for detainment, where the State filed a petition against each defendant, the court heard the allegations and mitigating evidence of each case, and the court made specific findings as to each. Additionally, the State argues that there was nothing prohibiting the court from hearing all the petitions together.

_____

[8]We find nothing in the record to confirm that the driver of the car received electronic monitoring as a condition of pretrial release.

¶ 58    A circuit court's consideration of a pretrial detention petition must be individualized and based on the specific articulable facts of each case. 725 ILCS 5/110-6.1(f)(7) (West 2022) ("Decisions regarding release, conditions of release, and detention prior to trial must be individualized" and court may use risk assessment tools to supplement overall determination); *Id.* § 5/110-6.1(a)(1), (a)(1.5) (reciting elements of detention petition requiring assessment of specific and articulable facts); *Id.* § 5/110-6.1(d)(1) (same); *Id.* § 5/110-6.1(e)(2) (same); *Id.* § 5/110-6.1(g) (factors used to assess potential individualized threat to individual person or community); *Id.* § 5/110-6.1(h)(1) (detention order must outline specific and articulable facts). The hearing also requires evaluation of a given defendant's available criminal history, any written or recorded statements, the substance of any oral statements made by any person, or any police reports within the State's possession at the time of hearing. *Id.* § 5/110-6.1(f)(1). Although not equivalent in nature to a full-blown criminal trial, defense counsel also has the ability to challenge the State's proffer. See *id.* § 5/110-6.1(f)(2), (3), (4), (6).

¶ 59    The record reflects that at the initial detention hearing, Hall, along with Ronnie Martin and Ronell Martin were present in court. The clerk of the court asked the parties, "Are we doing them altogether?" to which the assistant state's attorney responded in the affirmative. Hall voiced no objection. The State then indicated to the circuit court that it had tendered a copy of all three petitions to defense counsel, which included police reports, LEADs reports, criminal backgrounds, and "work product." Defense acknowledged receipt. At the conclusion of the State's proffer, defense counsel proceeded to argue in rebuttal, not only on Hall's behalf, but also on behalf of Ronnie Martin and Ronell Martin, given that she represented all three.

¶ 60    We note additionally that in a few instances, the court misidentified the various co-defendants during the combined hearing. Again, however, defense counsel did not object to

proceeding with the hearing in this manner. Further, defense counsel's mitigation arguments mirrored the approach of the court and the State, where she stated, "We would ask [the court] to consider the same argument that all three of these young men should be placed on [e]lectronic monitoring." Counsel went on to assert that "[T]hese young men deserve a chance to be placed on [e]lectronic and given the opportunity to fight these charges at home[.]"

¶ 61    A criminal defendant who fails to object to an alleged error forfeits appellate review. *People v. Cooper*, 2025 IL 130946, ¶ 22. This forfeiture rule prevents a criminal defendant from sitting idly by and knowingly allowing an irregular proceeding to go forward only to seek reversal due to the error when the outcome of the proceeding is unfavorable. *People v. Jackson*, 2022 IL 127256, ¶ 15. The rationale for the rule is simple; failure to raise the issue at trial deprives the trial court of any opportunity to take corrective action, thereby wasting time and judicial resources. *Id.* Having failed to object to the manner in which the detention proceedings were conducted, we deem the issue forfeited.

¶ 62    Even so, we find nothing irregular about the manner in which these proceedings were conducted, and Hall fails to cite us to any case to support his supposition of the same. Given that most of the purported acts occurred in tandem, it was not unreasonable for the court to have addressed the petitions in the way that it did. Moreover, both the State and defense counsel were able to present individualized arguments for both detention and pretrial release as to each defendant.

¶ 63    Hall next contends that the trial judge was biased against all of the defendants. He cites the following statement, made by the court in its initial detention ruling, as indicative of the court's bias. "Electronic monitoring again will not work for this type of people. Defendant will have 48 hours of unfettered freedom and would be able to obtain additional weapons and not follow the—

dictates [of] the [e]lectronic [m]onitoring." Hall argues that as all three defendants were young black men similarly charged and represented by the public defender's office, the statement was "very alarming and concerning."

¶ 64    The State rejects any notion of racial bias by the court, given that the statement's context concerned the crimes committed and not the defendants' race. We agree with the State.

¶ 65    "A trial judge is presumed to be impartial, and the party challenging the judge's impartiality bears the burden of overcoming this presumption." (Internal citation omitted.) *People v. Romero*, 2018 IL App (1st) 143132, ¶ 96. "Allegations of judicial bias or prejudice must be viewed in context and should be evaluated in terms of the judge's specific reaction to the events taking place." (Internal quotations and citation omitted.) *Id.* "In order to show bias, [the] defendant must demonstrate that the judge displayed 'active personal animosity, hostility, ill will, or distrust towards the defendant.' " *Id.* (quoting *People v. Shelton*, 401 Ill. App. 3d 564, 583 (2010)). "We review *de novo* the question of whether the [circuit] judge's conduct requires reversal of the judgment." (Internal citation omitted.) *Id.*

¶ 66    Hall focuses on one single statement made by the court in its initial detention ruling on what conditions were appropriate for the defendants given the allegations against them. In fact, the cited statement was not even made with regard to Hall's own detention ruling, but rather, to Ronnie Martin's. Viewed in context, the statement refers to the allegations against Hall and the other co-defendants, in which at least three had been alleged to have possessed illegal firearms and all of them alleged to have engaged in a crime spree across state lines.

¶ 67    Hall also neglects to mention that this was not the first type of statement made by the court in the initial detention ruling. Indeed, the transcript reflects that, with regard to the ruling for Ronell Martin, the court stated that Martin posed a real and present threat based on the "egregious

conditions" of the allegations against him, where "four people had the unmitigated gall to stop a car, point guns at the victims, and told them to leave the car or they'd be shot." The court went on further to state, as to the conditions prong for Martin, that "no conditions can mitigate the threat posed by these very acts. Electronic monitoring will not work. There is no way that these defendants will be able to follow [e]lectronic [m]onitoring since these egregious acts have total disregard for the law." Then, specifically with regard to Hall, the court made a similar statement when ruling on the conditions prong after detailing the allegations against him. Specifically, the court stated: "[T]here is no least restrictive conditions that would mitigate them from being detained. Electronic monitoring, again, will not work for these types of cases[.]"

¶ 68    Thus, in examining the whole of the court's comments, we find no evidence of judicial bias or prejudice. The transcript reflects that the court was concerned with the gravity of the allegations against all defendants, particularly regarding the vehicular hijacking, in its overall assessment of whether pretrial detention was appropriate.

¶ 69                                    2. Conditions Prong

¶ 70    Hall initially contends that the State failed to meet its burden of showing that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons in the community based on the specific articulable facts of the case or Hall's willful flight. He maintains that the State merely reiterated the allegations presented in "Prong I" of its argument, asserted that Hall could not be trusted on electronic monitoring, but otherwise pointed to no specific reason as to why electronic monitoring was not appropriate. Citing *People v. Stock*, 2023 IL App (1st) 231753, Hall argues that the State did no more than rely upon its factual proffer to argue that no condition would mitigate against the threat to the community. Thus, according to

Hall, the State failed to satisfy its burden to show that there were no less restrictive means than detention.

¶ 71    The State's argument regarding conditions as related to Hall was admittedly interwoven with that of the other co-defendants. Nevertheless, the State reiterated that GPS and electronic monitoring would be inappropriate for Hall given the nature of the crimes and the limitations of electronic monitoring, especially when considering Hall's self-admitted involvement in the events and how much activity had taken place in a mere few hours. See 725 ILCS 5/110-5(a)(1) (assessing the nature and circumstances of the charged offense); *Id.* § 5/110-5(a)(2) (assessing the weight of evidence against defendant); *Id.* § 5/110-5(a)(4) (assessing real and present threat to community based on specific articulable facts of the case). The State maintained that neither electronic monitoring nor home confinement would mitigate the risk of Hall repeating the offense, such as obtaining and possessing illegal weapons and using his phone to plan and discuss future crimes. The State's further argument regarding dangerousness and conditions was invited by the court at the subsequent hearing on Hall's motion for reconsideration and, again during the hearing on Hall's motion for relief. Moreover, the Procedure Code does not require that the State "utter specific words at a detention hearing" to satisfy its burden. *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 21. Thus, we believe that the State sufficiently met its burden.

¶ 72    Hall cites to *People v. Stock* for the proposition that more is required to satisfy the conditions prong than a recitation of the offending conduct. In *Stock*, the defendant was charged with one count of the detainable offense of aggravated battery/discharge of a firearm. *Id.* ¶ 1. The defendant was alleged to have discharged a firearm at the time that the complaining witness, his estranged wife, was packing up their residence to leave him and pursue a divorce. *Id.* ¶ 5. At the defendant's detention hearing, pretrial services rated the defendant a "1 out of 6" on the "new

criminal activity scale," and a "1 out of 6" on the "failure to appear scale." *Id.* ¶ 7. The record further reflected that the defendant had no other criminal history prior to the alleged offense. *Id.* ¶ 6. In granting the State's detention petition, the circuit court found that no conditions could mitigate the defendant's real and present threat because, per the written order, he had "shot a firearm at the complaining witness." *Id.* ¶ 8.

¶ 73 On appeal, the *Stock* court reversed and remanded the detention order. *Id.* ¶¶ 22-23. Although the court found that the State had met its burden on the first two elements of its petition, it failed on the conditions prong. *Id.* ¶¶ 13-15. The court noted that the State had presented "no evidence" on that element and had merely proffered the facts of the incident. *Id.* ¶ 17. Additionally, the court pointed out that the defendant had no prior criminal history and thus otherwise appeared to be an "upstanding and law-abiding member of the community." *Id.* ¶ 19. Finally, the court critiqued the circuit court's ruling, noting that neither the written order nor the oral ruling complied with the express requirement that the court provide a written summary as to why less restrictive conditions could not mitigate the threat posed by the defendant. *Id.* ¶ 20. Ultimately, the court reasoned that, "[i]f the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.* ¶ 18. However, the court cautioned, although "more [was] required" as to both the State's proffer and the court's analysis on this element, its holding was not to be interpreted to mean that "alleged facts stating the basic elements of an offense are not relevant or part of the proof that no conditions could mitigate the threat posed by a defendant." *Id.*

¶ 74 We acknowledge that, similar to the defendant in *Stock,* Hall has no prior criminal history and also received relatively lower scores on his pretrial services assessment. However, we still

find *Stock* distinguishable based on the nature of the alleged actions, which, even by *Stock*'s own language, is relevant to the conditions analysis. First, in *Stock*, the record failed to demonstrate that the State argued, let alone even mentioned, the applicable statutory provision governing the conditions analysis. *Id.* ¶¶ 5, 17. In contrast here, the State argued at hearing that no conditions could mitigate the real and present threat posed by Hall based on the egregious nature of the charged offenses, his statements made to police, and the implications that such activity could not ensure that Hall would abide by any pretrial conditions. Second, the circumstances of the alleged crimes here were much more deliberate and violent in nature in comparison to the *Stock* defendant's apparent momentary lapse in judgment. As noted by the third judge in this matter, "substantial steps" were taken to kick off the first crime of vehicular hijacking, where Hall was alleged to have exchanged text messages with another co-defendant to procure a vehicle. Then, Hall and his co-defendants continued to engage in crime after crime, which moved into Indiana and again back into Illinois following a multi-state police force and helicopter chase over the course of a few hours.

¶ 75    Further, the court's consideration of the proffer here was more substantive in nature than the one criticized in *Stock*. In our case, three judges issued oral rulings concerning whether any conditions were appropriate in lieu of pretrial detention, including the final judge who expressly discussed GPS and electronic monitoring. See *Carpenter*, 2024 IL App (1st) 240037, ¶ 21 (noting that "[t]he circuit court knows the law including conditions of release and less restrictive alternatives to detention."). Moreover, multiple rulings offered by the various judges in this case provided explanations as to why electronic monitoring or other conditions were inappropriate and expressed concern as to whether Hall would comply with any such restrictions. See *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 19 (noting the importance of courts articulating the reason

as to why a particular defendant would not comply with any conditions of release, versus a general threat posed by anyone). In reviewing the entire record, and based on the particulars of the offense, we believe that no conditions of release were reasonable in light of the circumstances.

¶ 76    Hall additionally contends that the court erred both procedurally and substantively in its ultimate determination that pretrial release was not appropriate for him. Procedurally, he argues that the court failed to comply with the Act by not entering a detention order which summarized its reasons for denying pretrial release, including why there were no less restrictive means aside from detention to mitigate his posed risk.

¶ 77    The State responds preliminarily that, as to the court's purported lack of written findings, the written finding requirement is only required for initial detention orders, citing 725 ILCS 5/110-6.1(h), and *People v. Harris*, 2024 IL App (2d) 240070. Further, the State continues, Supreme Court Rule 604(h) does not require the court to make any particular written findings on an order denying a motion for relief. Finally, the State asserts, where the court's oral findings, in addition to written findings, sufficiently explain why the State met its burden, a defendant is deemed sufficiently apprised and no error occurred, citing, among others, *People v. Vance*, 2024 IL App (1st) 232503.

¶ 78    We find included in the record the court's written detention order which was entered after the initial detention hearing as required by the Act. See 725 ILCS 5/110-6.1(h) (detention order must make written finding summarizing court's reasons for denial of pretrial release, including why less restrictive conditions would not mitigate real and present threat). Admittedly, as noted by the second judge in this case, the order is difficult to decipher. Even so, in compliance with statute, the court's order was memorialized in writing. Furthermore, the record also reflects an oral ruling by the original judge explaining why there were no suitable conditions to mitigate any risks

posed by Hall, which we have held to be sufficient to satisfy the requirements of the Act. See *People v. Vance*, 2024 IL App (1st) 232503, ¶¶ 26-32 (specific, detailed, and thorough oral findings may satisfy Act's written order requirement); *People v. Gooden*, 2024 IL App (4th) 231523, ¶¶ 31-38 (no reversal of detention order where, despite non-compliance with written order requirement, circuit court provided adequate explanation in its oral ruling); *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19 (written findings must be read in conjunction with oral announcements). Further, the record also reflects the court's oral ruling on the motion for relief, which also does not require an accompanying written order. See Supreme Court Rule 604(h)(2) (eff. April 15, 2024) (although party moving for relief must present a written motion and the grounds for relief, trial court need only hear and decide the motion).

¶ 79    Substantively, Hall argues that the court "conflated" the conditions and dangerousness prongs and ultimately failed to consider mitigating evidence, such as his lack of prior criminal history, age, family structure, and contributions to society. After reviewing the record, we also find this argument unpersuasive. Turning to the court's determination, and contrary to Hall's contention, the Procedure Code is clear in its language that the "dangerousness" assessment overlaps with the analysis of whether any conditions are appropriate in lieu of pretrial detention. Compare 725 ILCS 5/110-6.1(g)(9) (West 2022) (dangerousness analysis may include factors listed in section 110-5 of the Procedure Code, which provides similar statutory factors for conditions analysis) with 725 ILCS 5/110-5(a); *Carpenter*, 2024 IL App (1st) 240037, ¶ 17 ("The proof as to the danger presented by a defendant's pretrial release will frequently overlap with the evidence supporting a conclusion that less restrictive conditions cannot mitigate the threat" and "that proof may overlap again with the elements of the crime charged, but that does not render those facts any less compelling."). However, courts must also indicate why no set of conditions

would suffice to mitigate the threat examined within the second element of the petition. *Vance*, 2024 IL App (1st) 232503, ¶ 27.

¶ 80    On that point, we also reject Hall's argument that the court failed to rely on facts specific to his actions in the alleged events and that mitigating circumstances were not considered. We begin first with the initial detention hearing. The record reflects that the court appropriately assessed that pretrial detention was necessary to ensure the safety of the community based on a variety of considerations. In its remarks, although Hall attempts to frame this comment as the court attributing this specific action to him, the court stated that "they," meaning the defendants, were accused of pulling over a vehicle with a gun, which it considered to be "egregious" in nature and sufficient to detain on its own accord. See 725 ILCS 5/110-5(a)(1) (assessing nature and circumstances of charged offenses); see *Carpenter*, 2024 IL App (1st) 240037, ¶ 17 (noting that the "nature and circumstances of the crime charged may well be the most compelling evidence" available at a detention hearing). The court also considered Hall's own statements, including that he had fired and unlawfully possessed a weapon in Indiana. See 725 ILCS 110/5(a)(2) (assessing weight of evidence against defendant); 725 ILCS 5/110-6.1(g)(4) (consideration of defendants' own statements). The court was also concerned with placing all defendants on pretrial release, given the possibility that any of them would have 48 hours of "unfettered freedom" to obtain additional weapons and with no regard to the requirements of electronic monitoring. See 430 ILCS 65/1 (West 2022) ("[T]o promote and protect the health, safety and welfare of the public, it is necessary and in the public interest to provide a system of identifying persons who are not qualified to acquire or possess firearms [and] firearm ammunition[.]"); 725 ILCS 5/110-6.1(g)(7) (assessing whether defendant has been known to possess or have access to any weapons); *Vance*, 2024 IL App (1st) 232503, ¶ 24 (affirming pretrial detention where trial court found conditions of electronic

monitoring and home confinement to be improper conditions of release where court was concerned with future violations of detention order and how promptly such violations could be brought to court's attention).

¶ 81 Further, at the hearing on Hall's motion for reconsideration, which was presided over by a different judge, the court considered Hall's evidence in mitigation and, notably, commented that Hall was 18 years old, played rugby, was a senior in high school with two pending football scholarships, had a supportive family, and otherwise no prior criminal history. See 725 ILCS 5/110-5(a)(3)(A) (assessing defendant's character, physical condition, family and community ties, conduct, and criminal history); *Id.* § 5/110-5(a)(3)(B) (assessing whether, at time of current offense, defendant had any prior criminal history); 725 ILCS 5/110-6.1(g)(2) (same). Ultimately, however, the court did not find those factors to be sufficiently new or relevant to outweigh the "extremely dangerous, extremely violent, [and] extremely depraved circumstances" of the underlying offenses. 725 ILCS 5/110-5(a)(1) (assessing nature and circumstances of offense); *Id.* § 5/110-5(a)(4) (assessing specific and articulable facts of offense); 725 ILCS 5/110-6.1(g)(9) (court may assess any other factors that it believes has a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior). In particular, the court highlighted the aggravated vehicular hijacking, and while not specifically identifying Hall as the individual who threatened the victim, nevertheless noted that the "terror" at that stage was "unimaginable."

¶ 82 Finally, at the motion for relief hearing, a third judge addressed Hall's detention status, who noted on the record that it had reviewed the prior transcript from the initial detention hearing. Notably, the third judge commented that, with regard to the conditions analysis, this was a "closer call," given Hall's "relatively lower scores" on his pretrial services assessment, age, and lack of

background. See 725 ILCS 5/110-6.1(f)(7) (allowing court to consider risk assessment tools in determining propriety of pretrial detention, although not solely dispositive); 725 ILCS 5/110-5(b) (same); 725 ILCS 5/110-6.1(g)(5) (assessing age and physical condition of a defendant).

¶ 83    Nevertheless, the court balanced this consideration with the specific and articulable facts of the alleged offenses, namely the existence of text messages between Hall and a co-defendant, Hall's statements about being present for the hijacking, riding in the car, being driven to Indiana, possessing a weapon, identifying himself in a photo in which he pointed a gun at another victim, firing the gun at another car during an attempted robbery, and then fleeing on foot from police and passing his firearm to another upon apprehension. See 725 ILCS 5/110-5(a)(1), (a)(2). The court also noted that Hall had armed himself without having a FOID or CCL in the commission of such violent offenses in Illinois and Indiana. 725 ILCS 5/110-6.1(g)(7) (assessing whether defendant has been known to possess or have access to any weapons); 725 ILCS 5/110-5(a)(5) (assessing nature and seriousness of risk of obstructing or attempting to obstruct the criminal justice process posed by defendant's release).

¶ 84    The court also thoughtfully determined that Hall's adherence to any electronic monitoring or GPS requirements would be "useless." Specifically, it noted that electronic monitoring was only effective where Hall would comply with its procedures, which it found unlikely given Hall's possession of an illegal firearm and his flight from police. See *People v. Daniel*, 2024 IL App (1st) 240153-U, ¶ 23 ("Firearms are dangerous weapons, and the legislature tightly controls both their possession and storage."). It also noted electronic monitoring was only useful where there was a specific and present threat to a specific identifiable person, rather than the community at large. 725 ILCS 5/110-5(g) (electronic home monitoring may only be appropriate if it would reasonably ensure defendant's appearance or protect an *identifiable person* from imminent threat of serious

physical harm or if would reasonably ensure appearance of defendant for later hearings). Finally, it determined that GPS would also be "of little value" as there was no specific area that Hall needed to be kept from.

¶ 85     In sum, the record reflects that Hall's attempt to achieve pretrial release utilized all procedures available to him under the Act and our supreme court rules, and three different judges all determined that there were no sufficient conditions or combination of conditions to mitigate the unchallenged real and present threat posed by him to the community at large. We also do not see anything in the record to disturb these findings. Accordingly, we conclude that the circuit court properly granted the State's request for Hall's detention, and that its denial of the motion for relief was supported by the record.

¶ 86                                    III. CONCLUSION

¶ 87     For the reasons stated, we affirm the judgment of the circuit court.

¶ 88     Affirmed.