2026 IL App (1st) 252140-U

Order filed February 4, 2026

Second Division

No. 1-25-2140B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County, Illinois |
| | ) | |
| vs. | ) | No. 25 CR 0283201 |
| | ) | |
| JAQUAN CHESTNUT, | ) | Hon. William Fahy |
| | ) | Hon. John T. Gallagher |
| Defendant-Appellant, | ) | Judges Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Court did not err in denying pretrial release to defendant.

¶ 2    This is an appeal brought under the Pretrial Fairness Act (the PFA), whose provisions are found in article 110 of the Code of Criminal Procedure. See 725 ILCS 5/110 *et seq.* (West 2024). Defendant, Jaquan Chestnut, stands charged with armed robbery with a firearm, stemming from the robbery of a gas station in Evergreen Park. The court ordered his pretrial detention. He appeals, claiming the court erred in its findings that he was a threat to the community's safety

and that no set of pretrial-release conditions could mitigate that threat. We disagree and affirm the circuit court's judgment.

¶ 3                                     BACKGROUND

¶ 4      On January 29, 2025, defendant was charged with armed robbery with a firearm. See 720 ILCS 5/18-2 (a)(2) (West 2024). He was arrested on February 13. The People filed a petition for detention. At the detention hearing, the People proffered the following facts. We emphasize that this is only a proffer; defendant is presumed innocent at this stage. With that in mind, for ease, we refer to the unidentified individual with whom defendant allegedly partnered as his "accomplice" without suggesting that any criminal activity has been proven at this stage.

¶ 5      On September 19, 2024 at around 8:45 p.m., surveillance video captured a black Dodge Durango bearing Oklahoma registration plates entering a BP gas station parking lot in Evergreen Park. Defendant and his accomplice left the vehicle and approached the front of the gas station before returning to the vehicle. The Durango drove to the front of the store and parked.

¶ 6      Two witnesses, unnamed in the proffer, were in a car parked next to the Durango. "Witness 1" was the driver, "Witness 2" was in the back seat with their child. They saw defendant and his accomplice put on masks to obscure their faces. Witness 1 left the car and entered the gas station, while Witness 2 stayed in the back seat with their child.

¶ 7      Defendant and his accomplice entered the gas station with firearms, wearing masks that covered everything but their eyes and noses. One of the two yelled, "Don't move." The accomplice approached a third witness at gunpoint, asked her how many people were in the store, and told her to empty her pockets and give him her phone. That witness said the employees' phones were in lockers. Meanwhile, defendant wedged a blue glass pipe between the store's front door and its frame.

¶ 8      Defendant pointed his firearm at Witness 1, whom he'd seen in the parking lot, and ordered him to the floor. Defendant then approached the operator of the store, who was behind reinforced glass, pointed a gun at him, and yelled through the glass. Defendant demanded money and started counting down with his fingers. The operator dropped to the floor. Defendant unsuccessfully tried to open a locked door to the counter.

¶ 9      The accomplice approached a store employee, stuck a firearm in the employee's side, and ordered him to open the cash register. That employee did so, removing the cash drawer, which contained about $600, and placing it on the counter. The accomplice took the drawer and fled. Defendant did as well. The witnesses called 9-1-1.

¶ 10     Police officers arrived to the scene and spoke to employees and witnesses, reviewed video footage of the incident, and recovered the blue glass pipe that had been wedged between the door and frame. The pipe was submitted to the crime lab for DNA analysis.

¶ 11     Officers reviewed red-light footage from 95th Street and Western Avenue (two blocks west of the gas station) and saw a black Dodge Durango travel east on 95th from Western at 8:40 p.m. The Durango then travels east on 95th Street, passing Western Avenue at 8:45 p.m. Officers were able to identify the Durango's plate information; they learned that it was a rental vehicle owned by Avis Rent-a-Car.

¶ 12     Five days later, September 24, the police department in Niles, Michigan relayed to the police in Illinois that the Durango was involved in a high-speed pursuit through multiple jurisdictions in Michigan, reaching speeds of up to 140 miles per hour. The Durango crashed into a building in Niles and was "engulfed in flames." Defendant was apprehended.

¶ 13     Defendant's phone was recovered from the driver floorboard. Niles police officers provided photos of defendant and his clothing, which Evergreen Park officers determined

matched the clothing that had been captured on the video surveillance at the time of the armed robbery on September 19. Evergreen Park officers traveled to the Berrien County courthouse, where defendant consented to a buccal swab. Defendant's property was turned over to the officers.

¶ 14    The buccal swabs were sent for comparison with DNA on the blue glass pipe that had been left at the gas station. The results of the DNA testing was a match to defendant, "the match being 175 septillion times more likely to match [defendant] than an unknown contributor." From a search warrant of the phone found in the car, officers confirmed that the phone belonged to defendant, and the GPS location indicated that the phone matched the Dodge Durango's location at the gas station in Evergreen Park at the time of the incident.

¶ 15    Defendant pleaded guilty in Michigan to third-degree fleeing and eluding and was sentenced to 180 days in jail. He also had a misdemeanor charge pending in Indiana for carrying a handgun without a license.

¶ 16    Pretrial services gave defendant an elevated score of 5 for likelihood of reoffending and 4 for likelihood of failing to appear. Pretrial services recommended maximum conditions should the court choose to release defendant.

¶ 17    Based on its proffer, the State argued that the proof was evident and the presumption great that defendant committed the detainable offense of armed robbery with a firearm. The State argued that defendant was a threat to the safety of the community, given that his crime of armed robbery with a firearm threatened the safety of several people inside that gas station. The State added that a high-speed flight from police in a truck was inherently dangerous as well. Each offense, the State said, showed a blatant disregard for the safety of others.

¶ 18    Finally, the State argued that no set of conditions could sufficiently ameliorate the threat

4

defendant posed. The fact that he drove to Michigan after the detainable offense, then led police on a vehicle chase at speeds of up to 140 miles per hour showed that defendant could not be trusted with any release conditions. The State further feared that defendant might reunite with his unidentified accomplice, who was still at large.

¶ 19    Defense counsel told the court that defendant was age 22, single, with a one-year-old child. He was raised by his mother and stepfather, graduated from Bloom Township High School, and is currently unemployed. He has been residing with his uncle and would stay with him should he be given pretrial release and electronic monitoring. His girlfriend lives in Michigan and it was for that reason, not hiding from police, that defendant was in that neighboring state.

¶ 20    Defense counsel emphasized that, aside from the fleeing-and-eluding charge in Michigan, defendant has no criminal history. Counsel argued that defendant could be trusted to comply with electronic home monitoring at his uncle's house or any other release conditions imposed.

¶ 21    The circuit court ordered defendant detained. The court considered both the armed robbery and the fleeing-and-eluding offense violent and dangerous, particularly focusing on the armed robbery, where defendant did not more than carry or generically brandish a firearm but pointed the firearm at innocent people. The court did not believe he could trust defendant with pretrial release under these circumstances.

¶ 22    Defendant filed a motion for relief. He argued that he "lacks an extensive criminal history." He claimed that the court erred in finding him a threat to safety or a flight risk because—this is defendant's entire argument: "A court ordered condition of Pretrial Services, Office of the Chief Judge (OCJ) Electronic Home Monitoring, GPS, or a combination of the above said conditions could be ordered by this Court to eliminate any concerns this Court may

have regarding the safety of any person, any willful flight, or any threat to the safety of the community."

¶ 23    The motion for relief argued that the court erred in finding that no set of conditions could mitigate defendant's threat to safety or his flight risk because—again, his entire argument: "As previously stated, this Court has other least restrictive measures that can be imposed (i.e., Pretrial Services, OCJ Electronic Home Monitoring, or GPS) to mitigate any concerns it has to any person(s) or to the community."

¶ 24    The court denied the motion for relief. This appeal followed.

¶ 25                                    ANALYSIS

¶ 26    All defendants are presumed eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024). The State may detain an accused if it establishes that the charged offense is eligible for detention and then proves that (1) the proof is evident or the presumption great that the defendant committed an offense that qualifies him for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions can mitigate that real and present threat. *Id*. § 110-6.1(e).

¶ 27    The State must prove each and every one of these three facts by clear and convincing evidence. *Id*. Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.) *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. If the State fails to carry its burden on any of these three facts, the presumption of release remains, and detention is unlawful. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 28    When, as here, a detention order is based not on live testimony but only on proffers, our

review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 29    Defendant has not filed a supporting memorandum, choosing to stand on his motion for relief, as he may. See Ill. S. Ct. R. 604(h)(7) (eff. April 15, 2024). His arguments are limited to those raised in the motion for relief, anyway, regardless of whether he files a supporting memorandum. *Id*. R. 604(h)(2) (issues not raised in motion for relief "are deemed waived"); *People v. Drew*, 2024 IL App (5th) 240697, ¶¶ 39-43; *People v. Garcia*, 2025 IL App (1st) 251296-U, ¶ 23.

¶ 30    Defendant did not challenge the court's finding as to the first element, the proof-evident requirement, so we do not consider it. As we detailed above, defendant's arguments on the second prong (threat to safety) and third prong (whether conditions can mitigate threat) are identical. We have noted that there is considerable overlap between these two prongs, for the graver the safety threat, the more difficult to mitigate through conditions, and a lesser threat to safety is more easily mitigated by release conditions. See *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 17; *People v. Vance*, 2024 IL App (1st) 232503, ¶ 27; *People v. Hall*, 2025 IL App (1st) 250684-U, ¶ 79.

¶ 31    That identical argument the motion for relief made on the second and third prongs, we would note, never disputed the court's determination that his crime involved great danger and the unmistakable threat of violence. And for good reason. We echo the circuit court, when deciding whether defendant posed a threat to the community: the "answer is a resounding yes."

¶ 32    It is bad enough that defendant robbed a store and civilians inside that store; it is exponentially worse that he introduced a firearm, which could lead in countless ways to a discharge of that firearm, intentionally or unintentionally, out of premeditation or in response to an act by a law-abiding citizen licensed to carry a firearm of his own (like a store operator

7

worried about robberies). And defendant did more than bring a gun inside that store; he pointed it in the faces of innocent civilians, putting everyone inside that store at grave risk.

¶ 33     Defendant also demonstrated the lengths to which he would go to avoid capture, taking Michigan officers on a vehicular chase where he drove 140 miles an hour—*double* the highest recognized speed limit—showing not the slightest regard for the safety of so many pedestrians and fellow drivers on the road.

¶ 34     Defendant's callous disregard for the safety of others and defiance of law enforcement, demonstrated both in the offense for which he is charged in Illinois and the one to which he pleaded guilty in Michigan, belies any notion that pretrial-release conditions would be adequate to protect the community from this threat. The circuit expressed concerns with the limitations of electronic home monitoring, noting that it "can be walked away from" and "allows defendants two days of unfettered movement in the community." And most significantly to the court, it "does not prevent anyone from possessing firearms."

¶ 35     We agree with the circuit court's findings and its conclusion that defendant should be subject to pretrial detention.

¶ 36     The judgment of the circuit court is affirmed.

¶ 37     Affirmed.