2024 IL App (2d) 240517-U
No. 2-24-0517
Order filed December 10, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) ) | Nos. 22-CF-2065; 22-CF-2066; |
| v. | ) ) | 24-CF-1473 |
| DEONTE WILKINS, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's denial of pretrial release in case no. 24-CF-1473 did not constitute an abuse of discretion where the court reasonably determined that defendant posed a threat to the community and no conditions could mitigate that risk. The circuit court did not abuse its discretion in revoking defendant's pretrial release in case nos. 22-CF-2065 and 22-CF-2066 after defendant violated the terms and conditions of the pretrial release order in those cases. Affirmed.

¶ 2    In these interlocutory appeals under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), defendant, Deonte Wilkins, timely appeals the orders of the circuit court of Kane County revoking pretrial release and granting the State's petition to detain him pursuant to Public Act 101-

652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See also Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act) and *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting the supreme court's stay of pretrial release provisions and setting an effective date of the acts of September 18, 2023).

¶ 3   Defendant declined to file a memorandum pursuant to Illinois Supreme Court Rule 604(h) (eff. April 15, 2024), filing three "Notice Filed in Lieu of Rule 604(h)(7) Memorandum" on October 10, 2024.  Thus, defendant stands on the motions for relief filed by his public defender in the circuit court.  For the following reasons, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5   The State has charged defendant with several criminal offenses over the past few years. This appeal involves alleged crimes committed at multiple locations, against multiple victims, and ranging in severity from Class A Misdemeanor to Class X Felony.  For clarity, we will refer to the three cases in this appeal by their case numbers at trial.

¶ 6   On November 4, 2022, the State charged defendant with two counts of Aggravated Robbery Indicating Armed with Firearm (720 ILCS 5/18-1(b)(1) (West 2022) (Class 1 Felony)). Case no. 22-CF-2065 involved an aggravated robbery on October 18, 2022, and case no. 22-CF-2066 involved a separate aggravated robbery the next day.

¶ 7   The police synopsis for case no. 22-CF-2065 records that Chaudhori Jayeshkumar reported to the Elgin Police Department that he was robbed at Pop's Pantry store by a black male who

---

[1]The Act is also commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act.  Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

implied that he had a weapon in his pocket. The suspect took $800-$1000 from the cash register. Defendant was identified through video recordings from within the store, cell phone records that showed his phone in the immediate vicinity of the store at the time of the robbery, and his fingerprint recovered from a bag of chips that the suspect handled.

¶ 8    According to the police synopsis for case no. 22-CF-2066, the Elgin Police Department responded to the report of an armed robbery at the Wing Ho Restaurant. The victim, Bing Y. Liu, reported that a black male entered the back of the restaurant, demanded cash, and threatened to kill him if he moved or called the police. Police recovered video surveillance from the back of the building. When defendant and Kyra Carr were arrested for another alleged robbery at the Colonial Motel, clothes matching those worn by the suspect in the Wing Ho robbery were found in the motel room.

¶ 9    On November 10, 2023, defendant was ordered to be released pretrial in both cases, with maximum conditions, including that he shall "not commit any criminal offenses." Pretrial Release Officer Kimberly Vargas filed multiple "non-compliance of conditions" reports during the first half of 2024. Defendant failed to check in with pretrial services as directed and was reported for non-compliance of release conditions on several occasions. Officer Vargas also reported that routine Illinois Law Enforcement Agencies Data System (LEADS) reports showed defendant being arrested by the Streamwood Police Department on April 4, 2024 for Possession of a Controlled Substance and by the Rockford Police Department on June 17, 2024 for Criminal Trespass to Building and Theft.

¶ 10    On July 9, 2024, the State charged defendant with one count of aggravated robbery (720 ILCS 5/18-2(a)(1) (West 2022) (Class X Felony)), one count of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2022) (Class 2 Felony)), one count of burglary (720 ILCS

5/19-1(a) (West 2022) (Class 2 Felony)), two counts of theft (720 ILCS 5/16-1(a)(1) (West 2022) (Class 3 Felony)), two counts of retail theft (720 ILCS 5/16-25(a)(1) (West 2022) (Class 3 Felony)), and one count of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2022) (Class A Misdemeanor)). All of these charged offenses are included in case no. 24-CF-1473.

¶ 11 The lengthy police synopsis for case no. 24-CF-1473 describes multiple offenses at multiple locations. Elgin police responded to a report of a burglary at a Marathon Gas station shortly after midnight in morning of July 5, 2024. The suspects in the burglary were described as a white female and a black male. Surveillance video recorded the man throwing an object through the glass front door of the gas station. The woman entered the gas station and took several bottles of liquor. Nine bottles of alcohol, valued at over $500, were reported as missing. The estimated cost to repair the glass door was $2300. In the police synopsis, officers stated that the suspects in the video matched the descriptions of defendant and Kyra Carr.

¶ 12 Later that morning, at approximately 4:30 AM, Elgin police responded to the report of an armed robbery. Reynaldo Caporal-Herrera was awakened by a knock on his apartment door by a white female he recognized from his work at The Walnut SpeakEasy. He followed her downstairs and was robbed by a black male with a switchblade knife. The victim handed over his wallet and car keys and saw the couple leave in his 1996 black Honda Civic. Officers recovered video footage from The Walnut SpeakEasy and the robbery suspects matched the descriptions of defendant and Kyra Carr.

¶ 13 At approximately 9:30 PM that evening, Elgin police officers responded to a report of retail theft at Royal Liquors. The store owner, Sanjaykumar Patel, reported that a black male took six bottles of liquor from the shelves and left without paying for them. Following the suspect outside, the victim saw the black male enter a Honda Civic being driven by a white female. Video

surveillance showed the suspect matched the description of defendant, and the victim recorded the license plate number of the Honda Civic, which matched that of the one stolen earlier that morning. The bottles of liquor were estimated to be worth $330, but Mr. Patel declined to press charges.

¶ 14    The next morning, at approximately 1:45 AM, Elgin police officers responded to a report of retail theft at a Shell gas station on Randall Road. The clerk, Vimal Patel, reported that a black male entered the gas station and took three bottles of tequila without paying for them. The suspect got into a black vehicle with a female driver. The clerk recorded a partial license plate number that matched that of the stolen Honda Civic, and a security camera recorded the suspect. The appearance of the suspect matched the description of defendant.

¶ 15    Later that afternoon, Elgin police officers observed a black Honda Civic being driven by a white female with a black male passenger. Officers recognized defendant from prior police interaction. They recorded a partial license plate before the vehicle was driven away at high speed. After a pursuit, officers found defendant and Kyla Carr walking near the missing Honda Civic. The keys for the automobile were found in Ms. Carr's purse during a custodial search. The owner of the automobile, Reynaldo Caporal-Herrera, positively identified Kyra Carr in a lineup as one of the persons who robbed him. The police synopsis reported that Caporal-Herrera was unable to identify the second person because it had been too dark to see him clearly.

¶ 16    On July 10, 2024, the State filed verified petitions to revoke defendant's pretrial release in case nos. 22-CF-2065 and 22-CF-2066. The State also filed a verified petition to detain defendant on the charges alleged in case no. 24-CF-1473, alleging that: (1) the proof was evident or the presumption great that defendant committed a detainable offense; (2) his pretrial release would pose a real and present threat to the safety of any person or the community; and (3)  there was no set of conditions that would mitigate or alleviate the risks that defendant posed. See 725 ILCS

5/110-6.1 (West 2022). As additional grounds upon which to deny pretrial release, the State added that defendant had a prior criminal history that included violent felony convictions and failures to appear pretrial. The Public Safety Assessment Report for case no. 24-CF-1473 ranked defendant at the highest level on both the New Criminal Activity Scale and Failure to Appear Scale. Cited factors included the violent nature of the current offenses, pending charges at time of offense, multiple prior violent convictions, multiple failures to appear pretrial, and prior sentences to incarceration.

¶ 17    On July 11, 2024, the circuit court, Judge David P. Kliment, presiding, held a hearing on the State's petitions. The State proffered the police synopses for case nos. 22-CF-2065, 22-CF-2066 and 24-CF-1473 along with verbal descriptions of the series of offenses for which defendant was charged. Furthermore, the State asserted that it had proven by clear and convincing evidence that no condition, or combination of conditions, would reasonably ensure that defendant would not commit further felonies or Class A misdemeanors.

¶ 18    Defendant countered that the State had not proven by clear and convincing evidence that a detainable offense was committed by him in case no. 24-CF-1473. Specifically, defense counsel noted that the victim of the armed robbery did not identify defendant as the perpetrator and that descriptions provided by witnesses to the various robberies differed in their physical descriptions of the robber. Defendant further argued that he was not a threat to the community because there were no injuries alleged in any of the offenses. Defense counsel concluded that GPS monitoring would be a reasonable, less restrictive option to incarceration. With regards to the revocation of pretrial release in case nos. 22-CF-2065 and 22-CF-2066, defendant reiterated the argument that the State had failed to prove by clear and convincing evidence that he had committed new offenses.

¶ 19    The circuit court began its oral ruling by noting, "It's clear that my mistake was letting him out in the other two cases." The court considered the nature and circumstances of the offenses charged in case no. 24-CF-1473, noting that it was alleged that defendant was armed with a deadly weapon during the robbery. The court also considered defendant's prior history, which was "indicative of violent, abusive, or assaultive behavior," notably in past felony domestic battery charges. While the court did not find a specific individual that would be in danger if defendant were to be released, the court did find that the multiple offenses over several days, committed against multiple, random victims, were indicative of the danger defendant posed to the public at large. Noting that GPS and electronic home monitoring would likely be ineffective, the court found that no condition or combination of conditions could mitigate the threat. The circuit court concluded by granting the motions to revoke pretrial release in case nos. 22-CF-2065 and 22-CF-2066 based upon the reasoning provided for no. 24-CF-1473.

¶ 20    Defendant timely appealed. On October 16, 2024, we entered an order consolidating the three appeals into one for the purpose of the appellee's memorandum and our decision.

¶ 21                              II. ANALYSIS

¶ 22    Defendant declined to file a memorandum; thus defendant's motions for relief before the circuit court serves as his argument on appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Through his motions for relief, defendant raises two main arguments. First, defendant argues in case no. 24-CF-1473 that the State failed to prove by clear and convincing evidence that defendant committed the detainable offenses charged, that he is a real and present threat safety of the community, and that no condition or combination of conditions could mitigate such risk. See 725 ILCS 5/110-6(a) (West 2022). Second, defendant argues that, for similar reasons, the circuit court

erred in granting the State's motions to revoke defendant's pretrial release in case nos. 22-CF-2065 and 22-CF-2066.

¶ 23   Pretrial release is governed by section 110 of the Code of Criminal Procedure of 1963 (Code).  725 ILCS 5/110-1 *et seq*. (West 2022).  To deny a defendant pretrial release, the circuit court must find that the State proved the following by clear and convincing evidence: (1) the proof was evident or the presumption great that defendant committed a detainable offense *(id.* § 110-6.1(e)(1)); (2) defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

¶ 24   For pretrial release, we review whether the circuit court's factual findings were against the manifest weight of the evidence.  *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10.  A finding is against the manifest weight of the evidence when it is unreasonable.  *People v. Deleon*, 227 Ill. 2d 322, 332 (2008); *People v. Smtih*, 2024 IL App (2d) 240168, ¶ 18.  Under a bifurcated standard, we review the circuit court's ultimate decision regarding pretrial release for an abuse of discretion.  *Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Miller*, 2024 IL App (1st) 240588, ¶ 27; *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 36.  An abuse of discretion occurs when the court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the circuit court. *Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52.

¶ 25             A. Denial of Pretrial Release in Case No. 24-CF-1473

¶ 26   Defendant argues that the circuit court erred in granting the State's motion to detain him pretrial in case no. 24-CF-1473.  Defendant first avers that the circuit court erred in finding the

proof evident or the presumption great that he committed a detainable offense. In support of this argument, defendant notes that the court relied upon the police synopsis and that the witness did not identify him as the suspect in the armed robbery. He further notes that he was not in possession of the keys to the stolen vehicle when he was detained by police.

¶ 27    The State counters that circuit court reasoned that the synopsis included voluminous evidence from victims' statements to police officers and observations of multiple security videos. Indeed, the synopsis includes detailed statements and reference to video evidence regarding the appearance of both defendant and Ms. Carr at each of the locations of their crimes. The victim in the armed robbery was not able to identify the man who held the knife because it was too dark, but he did identify Ms. Carr as the accomplice. Similarly, the keys to the stolen vehicle were found in Ms. Carr's possession when she and defendant were apprehended. Based upon our review of the record, the court's finding the proof evident or the presumption great that defendant committed a detainable offense was not contrary to the manifest weight of the evidence.

¶ 28    Next, defendant argues that the State failed to meet its burden to establish that he poses a real and present threat to the safety of any person or the community. The legislature set forth a number of factors that the circuit court can consider when making such a determination, including the nature of the offense, the history and characteristics of defendant, and "any other factors." 725 ILCS 5/110-6.1(g) (eff. Jan. 1, 2023).

¶ 29    Defendant notes that the court relied on the same police synopsis and information of the pending cases for which he is awaiting trial. He claims these are especially weak because they do not show any actual or "threatened injuries." Defendant is accused of pointing a switchblade knife at a victim and demanding his car keys and wallet. It is unclear how defendant could have demanded a victim's possessions at knifepoint in a "non-threatening" manner.

¶ 30    The circuit court specifically found defendant to be a real and present threat to the community. The court specifically noted "the randomness of [defendant's] actions demonstrate that no member of the public is safe." The court considered the history and characteristics of defendant, including his history of violent, abusive, and assaultive behavior. Upon our review of the record, the circuit court's finding that defendant is a real and present threat to the community is not against the manifest weight of the evidence.

¶ 31    Finally, defendant asserts that the circuit court erred in finding that no less restrictive conditions could mitigate the threat that he poses to the community. The inherent danger presented by the charges themselves is insufficient to rebut the presumption of pretrial release. See 725 ILCS 5/110.-6.1(e) (West 2022). Indeed, in enacting the Act, "[o]ur legislature has mandated that *all criminal defendants* are eligible for pretrial release." (Emphasis added.) *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 (citing 725 ILCS 5/110-6.1(e) (West 2022)). Even those charged with violent offenses are presumed eligible for release; if "the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.*, ¶ 18.

¶ 32    When determining whether the conditions of a pretrial release may endanger the safety of the community, the court considers several factors, including the "history and characteristics of the defendant" and "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial." 725 ILCS 5/110-5(a)(3) (West 2022). "Thus, it is clear that the court is tasked with considering not just whether conditions short of detention exist, but also whether a defendant is likely to comply with them." *People v. Bueno*, 2024 IL App (2d) 240053, ¶ 13.

¶ 33    The State presented extensive, detailed evidence within the police synopsis. The synopsis includes summaries of witness testimony and video surveillance from each of the four robberies. The State presented additional police synopses of the aggravated robberies from case nos. 22-CF-2065 and 22-CF-2066. During the hearing, the circuit court noted defendant's multiple previous convictions for domestic battery.

¶ 34    Section 110-6.1(h)(1) of the Code requires the circuit court, if ordering the pretrial detention of a defendant, to "make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person *** based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(h)(1) (West 2022). The circuit court complied with this requirement and listed reasons why less restrictive conditions would not have been effective. Defendant violated his previous pretrial release by committing many new offenses, electronic home monitoring would show where defendant was, but not what he was doing, and available options for less restrictive conditions were insufficient to protect the community from the real and present danger presented by defendant. Based upon our review of the record, the circuit court did not abuse its discretion in finding that no less restrictive conditions would be effective.

¶ 35        B. Revocation of Pretrial Release in Case Nos. 22-CF-2065 & 22-CF-2066

¶ 36    Defendant also argues that the circuit court erred in granting the State's verified applications to revoke pretrial release in case nos. 22-CF-2065 and 22-CF-2066. We review whether the circuit court's findings on a petition to revoke pretrial release were against the manifest weight of the evidence and whether its ultimate decision was an abuse of discretion. *People v. Green*, 2024 IL App (1st) 240211, ¶¶ 32-33. Defendant argues that the State presented no evidence

on its petition to revoke pretrial release and relied only on the evidence presented in case no. 24-CF-1473. Citing our disposition in *People v. McGee*, 2024 IL App (2d) 240057-U, defendant argues that the State failed to present evidence or "make any significant argument concerning possible conditions of release." Defendant argues that the State must establish that a new offense was committed "beyond a preponderance of the evidence."

¶ 37 Defendant is incorrect. While a petition to deny pretrial release requires the State to show by clear and convincing evidence that the proof is evident or presumption great that a defendant committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), the revocation of an existing pretrial release is not held to the same standard. Under section 110-6(a) of the Code, a defendant's pretrial release may be revoked "if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release." 725 ILCS 5/110-6(a) (West 2022). The clear language of section 110-6(a) does not require the State to prove that a defendant committed a felony or a Class A misdemeanor, but only that a defendant was *charged* with a felony or Class A misdemeanor. *Id.* § 110-6(a); see also *People v. Hammerand*, 2024 IL App (2d) 240500, ¶ 19 (noting the lower threshold in section 110-6(a) compared to 110-6.1).

¶ 38 In the immediate matter, the State charged defendant with seven felonies and one Class A misdemeanor while he was on pretrial release in pending felony cases. Any one of these charges could sufficiently support a revocation of pretrial release. Additionally, we again observe that the State provided a detailed police synopsis to support each of these charges with references to video recordings from each of the crime scenes. As noted above, the circuit court's finding that no less restrictive conditions would prevent defendant from being charged with a subsequent felony or Class A misdemeanor is not against the manifest weight of the evidence.

¶ 39    The circuit court's decision to revoke defendant's pretrial release was not an abuse of discretion.

¶ 40                              III. CONCLUSION

¶ 41    For the reasons stated above, we affirm the judgement of the circuit court of Kane County.

¶ 42    Affirmed.