2025 IL App (1st) 251710-U

FIRST DISTRICT,
SIXTH DIVISION
November 26, 2025

No. 1-25-1710B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 25 CR 0631201 |
| | ) | |
| JESSICA WATSON, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held:* Circuit court did not err in denying pretrial release to defendant charged with aggravated kidnapping where she allegedly took a baby from a daycare facility and fled with daycare employees in hot pursuit.

¶ 2    Defendant Jessica Watson allegedly entered a daycare facility under the guise of touring it. While there, she picked up a baby and fled the facility with daycare employees in hot pursuit. She was charged with aggravated kidnapping and denied pretrial release under the Pretrial Fairness Act (Act) (725 ILCS 5/110-1 *et seq.* (West 2024)). She seeks reversal of this decision,

arguing she poses no threat to anyone and that any such threat could be mitigated by conditions of release. Finding no error, we affirm.

¶ 3                                                   I. BACKGROUND

¶ 4            According to the State's factual proffer, on May 12, 2025, Watson visited 4 Ever Young Daycare. Using a fake name, she claimed to be interested in enrolling her child and requested a tour of the facility. During the tour, she picked up a four-month-old baby, stating the baby was her cousin and she needed to take the baby to a doctor's appointment. A staff member attempted to call the baby's mother to ask whether Watson had permission to take the baby. Watson then fled with the baby in her arms as daycare employees gave chase. She struggled past the employees, forced her way out the exit door, and ran approximately 105 feet down the block before one of the employees grabbed her and another one retrieved the baby. The employees escorted Watson back into the daycare and held her until the police arrived.

¶ 5            After police took Watson into custody, they reviewed video footage, which corroborated the events described above. Watson told police she had suffered a miscarriage in December 2024. She said the baby's father told her to get the baby from daycare so she could keep the baby. However, Watson said she intended to return the baby to its father.

¶ 6            Police spoke to the baby's parents, who denied knowing Watson or giving her permission to take the baby. The mother told police she is the only one authorized to pick up the baby from daycare.

¶ 7            Watson was charged with aggravated kidnapping under sections 10-2(a)(2) and (3) of the Criminal Code. 720 ILCS 5/10-2(a)(2), (3) (West 2024). The State filed a petition for pretrial detention. A hearing was held on May 15, 2025, at which the State proffered the evidence set forth above. A pretrial services public safety assessment rated Watson 2 out of 6 (with 6 being

the highest) for a risk of new criminal activity, and 2 out of 6 for a risk of failure to appear. Watson has two misdemeanor convictions from Iowa: "interference with official acts" and "disorderly conduct." In January 2024, she was sentenced to a year of probation with deferred adjudication on each case. The State did not know the facts underlying these convictions but thought she was "likely not" on probation on the date of the alleged crime.

¶ 8        Watson's counsel argued she did not present a danger to the community, and any danger "could be managed given the appropriate mental health treatment that the jail would not have the ability to give her." Counsel said Watson's mental health declined after her second miscarriage in December 2024, when she was seven months pregnant. Her sisters and mother-in-law were working to get her mental health treatment when the kidnapping occurred. Counsel argued that if the court ordered Watson to get treatment at an inpatient treatment facility, her family would ensure it happened, and it would mitigate any risk posed by her release.

¶ 9        Judge James Hock denied pretrial release, finding by clear and convincing evidence the proof was evident and the presumption great that Watson committed aggravated kidnapping. The court also found she posed a real and present threat to the safety of any person, persons, or the community, describing her behavior as "a worst-case scenario *** [that is] about as dangerous as somebody can act towards an infant." The court emphasized she took premeditated action against "one of the most vulnerable members of our society." Finally, the court found no combination of conditions could mitigate the threat she posed since the brazenness of the crime reflected an inability to control her actions and no conditions of release would prevent her from committing other dangerous acts with children. The court acknowledged she had "personal issues that may be causing a mental health crisis," but stated it was "just another reason" she was "too much of a danger to be in the community."

¶ 10 On July 25, 2025, Watson filed a petition for relief from the court's detention order, arguing the court erred in finding (1) Watson posed a real and present threat to any person, persons, or the community, and (2) no condition or combination of conditions could mitigate said risk. Regarding dangerousness, Watson argued the court erred by relying heavily on an element of the charge, namely, the victim's age. See 720 ILCS 5/10-2(a)(2) (West 2024) (kidnapping a child under 13 years of age constitutes aggravated kidnapping). Regarding mitigation, Watson argued the court did not consider any specific conditions of release or explain why those conditions would be insufficient. She argued the court's concerns could be adequately addressed by electronic monitoring, and she could be released on condition of no contact with children.

¶ 11 On August 21, 2025, the court held a hearing on Watson's motion. Defense counsel emphasized Watson's "severe lack of [criminal] background" and the "speculative" evidence regarding her inability to comply with conditions of release. Defense counsel further argued that electronic monitoring would be sufficient to protect children since any children would "likely" be accompanied by adults who could report violations of Watson's conditions of release.

¶ 12 Judge Kenneth Wadas denied Watson's motion, finding the facts in the State's proffer were "outrageous" and "indicative of devious preplanning and premeditation and then the commission of a violent crime," and it was a "miracle" no one was injured as Watson was "fighting her way through" the daycare. Based on "the potential for repeating this kind of a situation," the court found Watson was a threat to the community. It also stated there was "no doubt" that Watson could not be completely controlled by electronic monitoring.

¶ 13 II. ANALYSIS

¶ 14 Under the Act, a defendant's pretrial release may only be denied in certain statutorily limited situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). As relevant to the instant appeal,

the State bears the burden of proving by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed a qualifying offense, (2) defendant's pretrial release poses a real and present threat to the safety of any person, persons, or the community, and (3) no condition or combination of conditions can mitigate said threat. *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 20. Because the parties proceeded by proffer, our review of the court's detention order is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Watson has opted not to file an appellate brief and instead rests upon her motion for relief in the trial court.

¶ 15　　　　In making a dangerousness determination, the court may consider, but shall not be limited to, evidence or testimony concerning: the nature and circumstances of the offense; the defendant's history and characteristics; the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; any statement made by defendant; the defendant's age and physical condition; the victim's age and physical condition; whether the defendant has access to weapons; whether the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal, or completion of sentence for another offense; and any other factors with a reasonable bearing on the defendant's propensity for violent behavior. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 16　　　　Watson argues the State failed to prove by clear and convincing evidence that she poses a real and present threat to anyone given her limited criminal history and low pretrial risk scores. We disagree. The record shows Watson made a calculated effort to steal a baby from a daycare facility by entering the facility under the false pretense of a tour and then falsely claiming she was related to the baby and needed to take it to an appointment. When deception proved insufficient, Watson resorted to violence, struggling past daycare employees with the baby in her arms and attempting to flee down the block. Given the premeditated nature of the crime and

Watson's reckless disregard for the baby's safety, the circuit court did not err in finding she poses a threat to children in the community.

¶ 17    Watson argues it was error for the court to consider the victim's age because it is an inherent element of aggravated kidnapping. Although the inherent danger presented by the offense is insufficient cause to deny pretrial release (*People v. Wilkins*, 2024 IL App (2d) 240517-U, ¶ 31), the court is entitled to consider the facts and circumstances of the offense. 725 ILCS 5/110-6.1(g) (West 2024). Here, Watson was charged with aggravated kidnapping under section 10-2(a)(2) of the Criminal Code, which prohibits kidnapping "a child under the age of 13 years." 720 ILCS 5/10-2(a)(2) (West 2024). The victim was not merely "under the age of 13," it was a helpless four-month-old baby. As the trial court aptly observed, a baby cannot defend itself, and there was a very real danger Watson could have dropped the baby while fighting with staff and forcing her way out the exit door. The court properly took this extreme recklessness into account in denying pretrial release.

¶ 18    The court also correctly determined that no conditions of release would mitigate the risk posed by Watson. In determining which conditions of pretrial release, if any, would ensure the safety of any person or the community, a court should consider (1) the nature and circumstances of the charged offense, (2) the weight of the incriminating evidence, (3) the defendant's history and characteristics, and (4) the seriousness of the threat defendant poses to any person, persons, or the community. 725 ILCS 5/110-5(a) (West 2024).

¶ 19    Here, the nature and circumstances of the offense, as well as the seriousness of the threat posed, weigh heavily against release. "[A] defendant's release on conditions depends on the court having confidence that the defendant will *comply* with those conditions." (Emphasis in original; internal quotation marks omitted.) *People v. Vincent*, 2024 IL App (4th) 240218, ¶ 61.

Watson's conduct was irrational, impulsive, and highly dangerous. When her ruse fell through, she attempted to flee with the baby, heedless of the harm that might result in the ensuing violent confrontation with staff. As the court observed, the brazenness of Watson's conduct reflects an inability to control her actions and undermines any confidence that she would comply with conditions of release.

¶ 20 Watson's counsel proposed she be released on electronic monitoring with conditions of no contact with children and receiving mental health treatment. Counsel suggested that children in the community would likely be accompanied by adults who could report any violation of Watson's conditions of release. These arguments are unconvincing. Although electronic monitoring would enable authorities to know where Watson was at any given time, it would not prevent her from encountering children, nor would it prevent impulsive and potentially violent actions of the type alleged in the State's proffer. The baby at the daycare was accompanied by adults whose presence did not deter Watson from violently trying to kidnap the baby. Moreover, there has been no investigation to even determine what Watson's mental health issues are and what, if any, medication or treatment should be provided. Watson self-reported her mental health issues, and there is no evidence in the record of any diagnosis or treatment. Based on the facts and circumstances presented, the court acted appropriately in denying pretrial release.

¶ 21                                    III. CONCLUSION

¶ 22         We affirm the judgment of the trial court.

¶ 23         Affirmed.